IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| STEVEN NEI,<br><br>       Plaintiff,<br><br>  vs.<br><br>THE TRAVELERS HOME AND<br>MARINE INSURANCE COMPANY,<br>AND RELATED TRAVELERS<br>COMPANIES,<br><br>       Defendants. | CV 17–137–M–DWM<br><br><br><br>OPINION<br>and ORDER |

This case arises out of an automobile accident that occurred on January 6, 2015, on Highway 93 near Florence, Montana. As a result of that accident, Plaintiff Steven Nei ("Nei") brought this action against his insurance company, Travelers Home and Marine Insurance Company ("Travelers"), seeking medical payments and underinsured motorist coverages under his automobile policies. In preparing the case, Nei sought discovery of Travelers' claims file, claims manuals, claims procedures, its pattern and practice, and incentives for bonuses. Travelers objected to most of Nei's discovery requests, resulting in the present motion to

compel.  (*See* Doc. 25.)  Argument on the motion was heard on July 18, 2018.

(*See* Min. Entry, Doc. 34.)  The motion is granted in part and denied in part.

**BACKGROUND**

On January 6, 2015, an elderly woman named Shirley MacDonald ran a stop

sign and pulled her SUV out in front of the Ford Taurus occupied by Nei and his

daughter.  Nei was not able to stop or avoid the accident.  He was not at fault.  As a

result of the accident, Nei has been diagnosed with injuries to his brain, spine, arm,

hand, and extremities.  After the accident, USAA, MacDonald's insurer, paid Nei

its liability limit of $300,000.  After Travelers was notified of Nei's claims, it took

the position that the claim was not worth more than the USAA liability limits.

From 2009 through the date of the accident, Nei paid Travelers premiums

for automobile insurance on his family's vehicles.  He paid for medical payment

coverage of $5,000 and underinsured motorist coverage of $500,000 for each of his

three vehicles.  Nei argues that these coverages should stack.

On August 2, 2017, Nei filed a state court complaint against Travelers in the

Fourth Judicial District Court, Missoula County, alleging bad faith and unfair

claims practices and seeking a declaration of coverage and punitive damages.

(Doc. 1-3.)  That action was removed to this Court on September 26, 2017, (Doc.

1), and on January 10, 2018, a preliminary pretrial conference was held.  The case

is set for trial in February 2019.  (*See* Doc. 21.)

## I.     Legal Standard

A motion to compel may be filed when a party disagrees with the objections interposed by the other party and wants to compel more complete answers.  *See Moreno Rivera v. DHA Global Forwarding*, 272 F.R.D. 5 (D.P.R. 2011).  The Court has wide discretion in controlling discovery.  *Jeff D. v. Otter*, 643 F.3d 278, 289 (9th Cir. 2011) (*citing Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988)).  If no claim of privilege applies, the production of evidence can be compelled regarding any matter that is "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  While "relevance" is defined broadly, *Moe v. System Trans., Inc.*, 270 F.R.D. 613, 618 (D. Mont. 2010), "[t]he 2015 Amendment to Rule 26(b)(1) emphasized the importance of proportionality in discovery requests," *Frost v. BNSF Rwy. Co.*, 218 F. Supp. 3d 1122, 1134 (D. Mont. 2016) (citing 2015 Committee Notes).  "However, the change was not intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional."  *Id.* (internal

quotation marks omitted). While the party seeking discovery has the burden to show the relevancy of the request, "the parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." *McCall v. St. Farm Mut. Auto. Ins. Co.*, 2017 WL 3174914, at *6 (D. Nev. July 26, 2017) (quoting *In re Bard IVC Filters Prods.*, 217 F.R.D. 562, 563 (D. Ariz. 2016)).

## II.    Discussion

Nei objects to Travelers' responses to Interrogatories 10, 11, 12, and 13 and Requests for Production 6, 7, 13, 15, 16, 17, 18, 19, 20, 24, 28, 29, 30, 32, 33, and 34. Those specific discovery requests and objections are attached. (*See* Appendix.) Nei (1) objects to Travelers' use of boilerplate objections, (2) seeks a complete, unredacted claims file, and (3) requests that Travelers be ordered to produce the requested historical and claim information.

Ultimately, both Nei's requests and Travelers' objections suffer from infirmities: Nei's requests lack "reasonable particularity," Fed. R. Civ. P. 34(b)(1)(A), while Travelers' objections also lack particularity, Fed. R. Civ. P. 34(b)(2)(B), and fail to state "whether any responsive materials are being withheld," Fed. R. Civ. P. 34(b)(2)(C).

### A.    Boilerplate Objections

A party must state objections to discovery requests with specificity. *See*

Fed. R. Civ. P. 33(b)(4); 34(b)(2)(B). Additionally, objections to requests for production "must state whether any responsive materials are being withheld on the basis of that objection" and "[a]n objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). The recitation of "boilerplate objections or blanket refusals" is therefore not consistent with the requirements of the discovery rules. *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.*, 408 F.3d 1142, 1149 (9th Cir. 2005). The Local Rules also require specific reasons for discovery objections. *See* Local Rule 26.3(a)(2)-(3) (requiring an objection "be followed by a statement of reasons"). "The burden lies on the objecting party to show that a discovery request is improper. Where a party's objections are themselves vague and impermissibly overbroad, and no specifics are given, the objecting party fails to carry its burden." *Russell v. Daiichi-Sankyo, Inc.*, 2012 WL 1161435, *2 (D. Mont. 2012). Nonetheless, the Court has an obligation to review the discovery requests to ensure that they are not frivolous. *Moreno Rivera*, 272 F.R.D. at 57.

Travelers' alleged "boilerplate" objections state either:

Travelers objects to this Interrogatory as irrelevant, overly broad, burdensome, oppressive, not proportional to the needs of the case, seeking non-discoverable expert information beyond that allowed by Rule 26(b)(4) of the Federal Rules of Civil Procedure;

or

Travelers objects to this Request for Production as irrelevant, overly

broad, not limited in duration, burdensome, oppressive, not proportional to the needs of the case, and seeking information that is confidential and/or proprietary business information.

Irrespective of their individual application, none of Travelers' objections state whether responsive material was withheld as explicitly required by Rule 34(b)(2)(C). At the July 18 hearing, counsel for Travelers argued that this omission is immaterial because the existence of an objection implies the existence of responsive materials. However, Rule 34 was specifically amended in 2015, Fed. R. Civ. P. 34 (Advisory Comm. Notes), to make such a statement mandatory. The failure to clarify the existence of responsive materials also hamstrings the Court's ability to assess the relevancy and proportionality of the discovery request. Travelers' objections fail to comply with Rule 34 and can be overruled on those grounds alone.

Travelers' objections also lack specificity in their individual application. Travelers' argument that while they may be broad and overlap, "the objections apply," (Doc. 27 at 18), is a truism. Almost any discovery request could be objected to by generally stating the limitations of civil discovery. That does not mean, however, that those objections are sufficiently specific.

On the other hand, as argued by Travelers, many of Nei's requests are themselves overbroad, failing to reasonably define the parameters of the information sought. *See* Fed. R. Civ. P. 26(b)(1). As a result, neither Nei's

requests nor Travelers' objections are helpful in determining the amount of discovery that is proportional under these circumstances.  *See* Fed. R. Civ. P. 26(b)(1).  At a minimum, however, proportional discovery lies somewhere in the middle.

Accordingly, Travelers' objections are overruled in part and it is required to provide responsive materials as outlined below.

### B.    Claims File

Nei also seeks a complete, unredacted copy of his claims file.  Travelers insists that it has produced the claim file, excepting only the privilege portions outlined in the privilege logs, which have been properly supplemented pursuant to Rule 26(e).  Travelers further insists that the privileged information was appropriately withheld.  Nei argues that Travelers is impermissibly attempting to use privilege as both a sword and a shield.  Nei further argues that Travelers has sent him on "a never-ending wild good chase," releasing different portions of the claims file at different times and with over 1,500 pages of shuffled, duplicate pages of documents.  (*See* Doc. 26 at 16.)  At this point, it is not entirely clear what portions of the claims file have been produced and which redacted.  It seems that the Third Supplemental Privilege Log (March 27, 2018) outlines all that has been withheld.  Because this case sits in the unique procedural posture where both bad faith litigation and claim investigation are pending at the same time, *in camera*

review of most of the withheld documents is necessary.

A federal court sitting in diversity applies the privilege law of the forum state, *Theme Promotions, Inc. v. News Am. Marketing FSI*, 546 991, 1007 (9th Cir. 2008), and applies federal law in determining the application of the work product doctrine, *Moe*, 270 F.R.D. at 622. Thus the Court here applies Montana privilege law and federal work product law.

Under Montana law, privilege is construed narrowly, *Am. Zurich Ins. Co. v. Mont. Thirteenth Jud. Dist. Ct.*, 280 P.3d 240, 245 (Mont. 2012), and "[t]o the extent an attorney acts as a claims adjuster, claims process supervisor, or claims investigation monitor, and not as a legal advisor, the attorney-client privilege does not apply," *Barnard Pipeline, Inc. v. Travelers Property Cas. Co. of Am.*, 2014 WL 1576543, at *3 (D. Mont. 2014) (internal quotation marks omitted). "An insurer in a bad faith case waives the attorney-client privilege by relying on advice of counsel as a defense to a bad faith charge." *Id.* "To deserve protection [under this privilege], . . . documents must contain confidential communications for the purpose of seeking legal advice." *Id.* at *6.

To be protected under the work product doctrine, the document must be "prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3)(A). This does not include documents prepared in the ordinary course of business, *Barnard Pipeline, Inc.*, at *4, and the party withholding the documents has the burden to show that

*each document* withheld "was prepared or obtained because of the prospect of litigation," *Moe*, 270 F.R.D. at 625 (internal quotation marks omitted). "Often, in insurance bad faith litigation, the work product doctrine does not apply to materials that are generated before the insurer has formally denied the insured's claim because such materials are prepared as part of the ordinary course of business." *Barnard Pipeline, Inc.*, at *4. But, once an insured has filed a bad faith action, "all documents generated by the insurer are generated 'in anticipation of litigation' and are not part of the ordinary course of business." *Id.*

The Third Supplemental Privilege Log outlines approximately 43 pages withheld pursuant to either privilege or work product. Only one entry pre-dates Travelers' knowledge of Nei's lawsuit, and is described as emails between attorney Adrienne Harris and Anthony Schwisow about "a separate claim that was inadvertently added to claim notes." (*See* Doc. 26-10 at 5 (THMI00105-06, 1/2716 and 1/21/16).) All of the other documents post-date Travelers' knowledge of this bad faith lawsuit, (*see* Notice of Removal, Doc. 1 at ¶ 2 (indicating Travelers became aware on August 28, 2017)), and relate to communication with Travelers' current counsel, Jon Wilson. It appears all the other information withheld under the previous privilege logs—including communications with previous counsel Spoon Gordon Ballew—has been provided.

The question of whether the documents identified in the Third Supplemental

Privilege Log have been properly withheld is complicated by the fact that Travelers has never formally denied Nei's claim, admitting at the July 18 hearing that it continues to investigate the claim with the aid of present counsel. Thus there is a question about invoking the attorney-client privilege based on the extent to which present counsel acted as a "claims adjuster, claims process supervisor, or claims investigation monitor, and not as a legal advisor," *Barnard Pipeline, Inc.*, at *3.

There is also a work product question because "the work product doctrine applies to documents generated by an insurer after the insured files a bad faith claim against the insurer, even when the insurer has not yet formally denied the insured's claim." *Id.* at *4. But, work product protection is not absolute, and "a party may discover work product materials if it can establish the relevance of the materials, the requisite need for the materials, and the requisite hardship in obtaining the materials by other means." *Id.* at *5 (citing Fed. R. Civ. P. 26(b)(3)(A)(i)-(iii)). "To obtain ordinary work product materials, the requesting party must show a 'substantial need' for the materials." *Id.* And, "[t]o obtain opinion or mental impression work product as defined in Fed. R. Civ. P. 26(b)(3)(A)(ii), the requesting party must show a 'compelling or overwhelming need' for the materials." *Id.* (citing *Moe*, 270 F.R.D. at 626–27).

As explained in *Barnard Pipelines, Inc.*:

Because an insurer's "claims file reflects a unique, contemporaneous record of the handling of the claim" that cannot be obtained elsewhere, because the "strategy, mental impressions and opinion of the insurer's agents concerning the handling of the claim are directly at issue" in an insurance bad faith claim, the need for such materials is compelling, and both ordinary and opinion work product protection is generally overcome in bad faith litigation when asserted by the insurer's agents.

*Id.* (internal citations omitted). But, an "insured cannot establish a compelling need for the opinion work product of an insurer's attorneys" "unless the insurer relies on the advice of counsel defense." *Id.*: *see Holmgren v. St. Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992) ("[O]pinion work product may be discovered and admitted when mental impressions are *at issue* in a case and the need for the material is compelling."); *Dion v. Nationwide Mut. Ins. Co.*, 185 F.R.D. 288, 293 (D. Mont. 1998).

Accordingly, *in camera* review of most of the documents identified in the Third Supplemental Privilege Log is appropriate. *See Moe*, 270 F.R.D. at 623–24 (opting for *in camera* review over the more serious sanction of deeming deficient log entries "as a waiver of the attorney-client privilege"). Only by reviewing the content of these documents can the Court determine whether they contain claims handling, justifying Nei's "compelling need" for them, or whether they contain legal advice of counsel and/or counsel's mental impressions and opinions limited to the present litigation.

Travelers need not produce, nor provide for the Court for in camera review,

the "Draft of Civil Cover Sheet," THMI03032; "Draft(s) of Notice of Removal to U.S. District Court," THMI03064-68, 033608-09 "Draft of Preliminary Pretrial Statement," THMI03209-32; "Draft(s) of Exhibit Designation for Notice of Removal to U.S. District Court," THMI 03588, 03590, 03607; "Draft of Answer and Demand for Jury Trial," THMI03971-04002; "Draft of Corporate Disclosure Statement," THMI04017-19; or "Draft of Attachment to Civil Cover Sheet," THMI04069. These documents undisputedly contain the opinions and mental impressions of Travelers' current counsel in relation to the current litigation and Nei cannot establish compelling need for them.

## C.    Other Information

Finally, Nei has requested Travelers' historic information and information for other claims and lawsuits. Nei argues that other cases show Travelers has the information and that similar discovery has been previously ordered. *See Moe*, 270 F.R.D. at 621–23. Nei is entitled to certain historical and claims handling information, *id.* at 631; however, he is required to show a nexus with the issues in this case or that "the defendant's conduct in other cases" is "sufficiently similar to the conduct in the instant case," *id.* at 620. To the extent Nei makes general requests for information unrelated to Travelers' activities in Montana at or around the time of his claim, those requests are denied as irrelevant and disproportionate. Fed. R. Civ. P. 26(a)(1).

### D. The Individual Requests

Consistent with the analysis provided above, each interrogatory and request for production is addressed individually:

**INTERROGATORIES:**

*INTERROGATORY NO. 10*: *Identify the number of claims in which Defendant or its attorneys have hired any physicians to provide medical records reviews or medical examinations in any Montana cases in the last 10 years.*

**Ruling: request limited, Travelers required to answer**

In his complaint, Nei alleges numerous facts associated with his treatment and diagnosis by Dr. Rosen in Missoula, (Doc. 4 at ¶¶ 22–26), and claims that Travelers has been obstinate in "seeking to hire forensic medical examiners to justify its own predetermination about [Nei's] claim," (*id.* at ¶ 60). Nei further alleges that "Travelers refused to accept statements from Steve Nei's medical providers . . . [and] delayed things further by stating that it needed more information before it could send Steve Nei to its hand-picked doctors for forensic medical evaluations in order to support its position." (*Id.* at ¶¶ 74, 75.) Nei has therefore made a sufficient threshold showing that the interrogatory is relevant to the issues in the case.

However, Nei has made no allegation—and presents no evidence—that any physicians hired by Travelers, including in the present case—were incompetent or not qualified to perform either medical records review or an independent medical

examination. To the contrary, at the hearing, counsel for Travelers indicated that Nei's policy required he see one of Travelers' physicians and that the physician utilized in this case had not worked for Travelers before. But, even if that is not the whole story, the mere fact that Travelers contracts with certain physicians is not sufficient to show a "track record" of "biased medical opinions." *See McCall*, at *9. "If the requirement for proportionality in discovery means anything . . . it must mean that burdensome, tangential discovery should not be permitted based on the mere possibility that something may turn up to support what is otherwise only speculation." *Id.*

Weighing these concerns, Travelers is required to respond to a narrower interrogatory: *Identify the number of claims in which Defendant or its attorneys hired the physician(s) that worked on this case to provide medical records reviews or medical examinations at the time of Nei's claim and five (5) years prior to the filing of his claim.*

INTERROGATORY NO. 11: *For all claims in which Defendant has hired any Montana physicians to provide medical records reviews or medical examinations in the last 10 years, identify the nature of the case and the name, address, and phone number of the Montana physicians Defendant or its attorneys have hired.*

**Ruling: request limited, Travelers required to answer**

Consistent with Interrogatory No. 10, *supra*, Travelers is required to respond to a narrower interrogatory: *For all claims identified in No. 10, identify the nature of the case and the name, address, and phone number of the physicians Defendant*

*or its attorneys have hired at the time of Nei's claim and five (5) years prior to the filing of his claim.*

*INTERROGATORY NO. 12: State the amount of money which Defendant or its attorneys have paid to the Montana physicians identified above in the last 10 years.*

**Ruling: request limited, Travelers required to answer**

Consistent with Interrogatory Nos. 10 and 11, *supra*, Travelers is required to respond to a narrower interrogatory: *State the amount of money which Defendant or its attorneys have paid to the physicians identified above at the time of Nei's claim and five (5) years prior to the filing of his claim.*

*INTERROGATORY NO. 13: Provide a list of all claims that have been made against Defendant for underinsured motorist coverage, uninsured motorist coverage, medical payment coverage, and bad faith at the time of Nei's claim and five (5) years prior to the filing of his claim.*

**Ruling: Travelers' objection is sustained**

This request is overbroad and goes beyond the scope of matters relevant to this bad faith litigation. It is also disproportionate considering the issues in the case and the bearing such discovery would have on them. Fed. R. Civ. P. 26(b)(1).

**REQUESTS FOR PRODUCTION:**

*REQUEST FOR PRODUCTION NO. 6: Produce the entire claims file or files pertaining to Steve Nei's claims involved in this case from the date they were opened to the present.*

**Ruling: withheld documents subject to *in camera* review**

*See supra*, Section II(B).

*REQUEST FOR PRODUCTION NO. 7*: *Produce a copy of all electronic documents, including but not limited to adjuster's notes, diary entries, e-mails, or any other electronic documents dealing in any manner with Plaintiff's medical payment and underinsured motorist claims.*

**Ruling: withheld documents subject to *in camera* review**

*See supra*, Section II(B).

*REQUEST FOR PRODUCTION NO. 13*: *Please produce any and all policy manuals, claim manuals, general manuals, rules, instructions, guidelines, internal operating procedures, or other similar written evidence of the policies, procedures, or protocols required or recommended by Defendant or Defendant's adjusters, in connection with the processing, adjustment, settlement, or handling of bodily injury and underinsured motorist claims in Montana.*

**Ruling: request limited, Travelers required to produce**

Travelers' claims manual and policies are relevant to Nei's bad faith claims. *See Moe*, 270 F.R.D. at 621–23. However, the request is overly broad and must be temporally limited. *See First Horizon Nat'l Corp. v. Houston Cas. Co.*, 2016 WL 5869580, at *7–8 (W.D. Tenn. Oct. 5, 2016) ("The Defendant's conduct and positions they took in other insurance claims is of no consequence to the instant case."). Travelers is therefore required to respond to a narrower request: *Please produce any and all policy manuals, claim manuals, general manuals, rules, instructions, guidelines, internal operating procedures, or other similar written evidence of the policies, procedures, or protocols required or recommended by Defendant or Defendant's adjusters, in connection with the processing, adjustment,*

*settlement, or handling of bodily injury and underinsured motorist claims in*

*Montana at the time of Nei's claim and five (5) years prior to the filing of his*

*claim.*

<u>REQUEST FOR PRODUCTION NO. 15</u>: *Please produce all manuals, guidelines, newsletters, or directives made available to claim supervisors or managers during the period of 2005 through the present by Defendant or Defendant's employees.*

**Ruling: request limited, Travelers required to produce**

Travelers' manuals and policies are relevant to Nei's bad faith claims.

However, this request is overly broad and is limited to those documents made

available to employees in connection with bodily injury and underinsured motorist

claims in Montana around the time of Nei's claim.  Unlike RFP No. 13, it does not

make sense to limit the request to those associated specifically with Nei's claims as

these types of policy documents and broader operations manuals would not

necessarily be connected to a specific case.  And while Travelers "cannot

unilaterally narrow the geographic scope of plaintiffs' requests to the region of

Montana," *Simonsen v. Allstate Ins. Co.*, 31 M.F.R. 154, 157 (D. Mont. 2001), Nei

fails to make the requisite relevancy showing for his expansive request.  Travelers

is therefore required to respond to a narrower request: *Please produce all manuals,*

*guidelines, newsletters, or directives made available to claim supervisors or*

*managers in Montana at the time of Nei's claim, and five (5) years prior to the*

*filing of his claim, by Defendant or Defendant's employees in connection with the*

*processing, adjustment, settlement, or handling of bodily injury and underinsured*

*motorist claims.*

REQUEST FOR PRODUCTION NO. 16: *Please produce all asset and balance sheets showing the net worth of Defendant.*

**Ruling: production not required**

As discussed on the July 18 hearing, Nei may rely on publicly available

information regarding the net worth of Travelers and its related entities.  Any

objection by Travelers that such information exaggerates or inaccurately reflects its

net worth will be considered in conjunction with its refusal to provide more

specific information as requested above.

REQUEST FOR PRODUCTION NO. 17: *Please produce organizational charts regarding the claims department from 2005 to the present. [If you contend that your company did not maintain organizational charts during any portion of the time covered by this request, then please produce documents and writings containing information regarding the departmental structure, lines of supervision or authority, and personnel employed by Defendant during such period.]*

**Ruling: request limited, Travelers required to produce**

As discussed above, Travelers' internal structure and incentives are relevant

to Nei's bad faith claims.  However, this request is overly broad and must be

limited to employees working on bodily injury and underinsured motorist claims in

Montana around the time of Nei's claim.  Travelers is therefore required to respond

to a narrower request: *Please produce organizational charts regarding the claims*

*department handling claims in Montana at the time of Nei's claim and five (5)*

*years prior to the filing of his claim. [If you contend that your company did not*

*maintain organizational charts during any portion of the time covered by this*

*request, then please produce documents and writings containing information*

*regarding the departmental structure, lines of supervision or authority, and*

*personnel employed by Defendant during such period.]*

<u>REQUEST FOR PRODUCTION NO. 18</u>: *Please produce written job descriptions for all positions held by Anthony Schwisow and his supervisors during the years of 2005 through the present.*

**Ruling: Travelers' objection overruled as to Schwisow's job descriptions, sustained as to his supervisors'**

Mr. Schwisow appears to have been involved in the handling of Nei's claim.

His written job descriptions around the time of Nei's claim are relevant to Nei's

present bad faith claim. *See McCall*, at *10 ("Information regarding the job

qualifications and training of the claims employees who actually handled the

plaintiff's insurance claim is relevant and generally discoverable in a bad faith

action."). However, it is disproportionate to also require the job descriptions for

his supervisors, without specifically naming them. Travelers is therefore required

to respond to a narrower request: *Please produce written job descriptions for

positions held by Anthony Schwisow at the time of Nei's claim and five (5) years

prior to the filing of his claim.*

<u>REQUEST FOR PRODUCTION NO. 19</u>: *Please produce all directions for your claims adjusters handling cases in Montana.*

**Ruling: Travelers' objection is sustained**

This request is overbroad and it is not clear what Nei means by "directions."

*REQUEST FOR PRODUCTION NO. 20: Please produce complete copies of all information Travelers produced in discovery in the case of* Grossi v. Travelers*, 79 A.3d 1141 (Pa. Super 2013), with the exception of any of the plaintiffs medical records or private information regarding the plaintiff in that case.*

**Ruling: Travelers' objection is sustained**

This request is overbroad, seeks irrelevant information, and asks for

discovery disproportionate to the needs of the case. As recognized in *Grossi*, "Bad

faith claims are fact specific and depend on the conduct of the insurer *vis a vis* the

insured." 79 A.3d at 1150 (quoting *Condio v. Erie Ins. Exch.*, 899 A.2d 1136,

1142–43 (Pa. Super. 2006)). The facts in *Grossi*—which involved Travelers

holding only a $1,000,000 reserve despite facts and value of claim—are

distinguishable from those present here. *See Moe*, 270 F.R.D. at 620 (noting that

while "evidence of a defendant's conduct in other cases may be relevant and

admissible," it must be "sufficiently similar to the conduct in the instant case").

*REQUEST FOR PRODUCTION NO. 24: Please produce a computerized list of and copies of complaints filed in all civil actions against Defendant during the past ten (10) years alleging insurance bad faith, unfair claim settlement practices, fraud, or similar tort theories, stating the court in which the case was filed, the case number, and the name, address, and telephone number of counsel for plaintiff(s) in each such action.*

**Ruling: request limited, Travelers required to produce**

This request is overbroad, disproportionate, and includes information not

relevant to this case. Cases in Montana involving similar issues during a similar time period, however, are relevant to Nei's claims. Travelers is therefore required to respond to a narrower request: *Please produce a computerized list of and copies of complaints filed in all civil actions against Defendant at the time of Nei's claim and five (5) years prior to the filing of his claim in Montana alleging insurance bad faith, unfair claim settlement practices, fraud, or similar tort theories, stating the court in which the case was filed and the case number.* Further information sought by Nei is available in the public record.

REQUEST FOR PRODUCTION NO. 28: *Please produce copies of all complaints by policyholders received by Defendant from individuals in Montana from 2005 to the present.*

**Ruling: Travelers' objection is sustained**

This request is vague and overbroad. There is no limitation on the type of complaints, making it unclear how this information is relevant to the current lawsuit or proportionate to the needs of the case.

REQUEST FOR PRODUCTION NO. 29: *Please produce complete copies of Defendant's claims manuals pertaining to evaluating and reserving uninsured and underinsured motorist claims by its policyholders, including Travelers Liability Best Practices Manual(s).*

**Ruling: Travelers required to produce**

As mentioned above, Travelers' manuals and policies are relevant to Nei's bad faith claims. It is fair to assume that reserves may be recommended by Montana adjusters but they may be set elsewhere in Travelers' organization related

to underinsured motorist claims in Montana at the time of Nei's claim. Travelers is

therefore required to respond this request.

REQUEST FOR PRODUCTION NO. 30: *Please produce any written documentation that explains with specificity and particularity the manner in which you compensate your employees who adjust, handle, settle, litigate, or otherwise process uninsured or underinsured claims submitted to you.*

**Ruling: request limited, Travelers required to produce**

Travelers' payment, incentive, and bonus information is relevant to Nei's

bad faith claim. However, the present request is overbroad and must be limited to

compensation for employees that did adjust, handle, settle, litigate or otherwise

process such claims in Montana around the time of Nei's claim. Travelers is

therefore required to respond to a narrower request: *Please produce any written*

*documentation that explains with specificity and particularity the manner in which*

*you compensate your employees who adjusted, handled, settled, litigated, or*

*otherwise processed uninsured or underinsured claims in Montana at the time of*

*Nei's claim and five (5) years prior to the filing of his claim.*

REQUEST FOR PRODUCTION NO. 32: *Please produce copies of any Montana-specific claims manuals or directives you have generated or used for Montana claims from 2005 to the present.*

**Ruling: request limited, Travelers required to produce**

The documents requested here are likely covered by the other requests

discussed above. To the extent Travelers has such information not yet produced, it

is required to provide it as follows: *Please produce copies of any Montana-specific*

22

*claims manuals or directives you generated or used for Montana claims at the time*

*of Nei's claim and for the period of five (5) years before his claim was submitted.*

*REQUEST FOR PRODUCTION NO. 33: Please produce your underinsured motorist claims manuals and their indexes for the years 2005 to the present.*

**Ruling: request limited, Travelers required to produce**

The documents requested here are likely covered by the other requests

discussed above. To the extent Travelers has such information not yet produced, it

is required to provide it as follows: *Please produce your underinsured motorist*

*claims manuals and their indexes in effect in Montana at the time of Nei's claim*

*and for the period of five (5) years before his claim was submitted.*

*REQUEST FOR PRODUCTION NO. 34: Please produce any manuals or directives regarding handling Montana cases which address medical payment and stacking.*

**Ruling: request limited, Travelers required to produce**

The documents requested here are likely covered by the other requests

discussed above. To the extent Travelers has such information not yet produced, it

is required to provide it as follows: *Please produce any manuals or directives in*

*effect at the time of Nei's claim, and for the period of five (5) years before his*

*claim was submitted, regarding handling Montana cases which address medical*

*payment and stacking.*

## CONCLUSION

IT IS ORDERED that Nei's motion to compel (Doc. 25) is GRANTED in

PART and DENIED in PART as outlined above. Travelers must produce the

information identified above to Nei within ten (10) days of the date of this Order.

Because Travelers has not demonstrated that its claims manuals and policies are

entitled to protection as trade secrets or confidential, proprietary information, the

disclosures ordered are not subject to a Court-imposed protective order; nor is Nei

required to stipulate to such an order. *See* Fed. R. Civ. P. 26(c) (permitting the

court to enter a protective order when the party seeking protection establishes good

cause and justice requires the entry of such an order); *Moe*, 270 F.R.D. at 621

("Broad allegations of harm, unsubstantiated by specific examples or articulated

reasons, do not satisfy the Rule 26(c) test.") (alterations and internal quotation

marks omitted); *McCall*, at *11–12. Additionally, Travelers may not simply

"dump" documents, but must provide the requested material in a searchable and

indexed format. Travelers is cautioned to avoid "confusing and evasive" responses

to the broader disclosure requests ordered above. *See Simonsen*, 21 M.F.R. at 160.

IT IS FURTHER ORDERED that Travelers must provide the withheld

material identified in its Third Supplemental Privilege Log (Doc. 26-10)—minus

those documents identified as excluded—for *in camera* inspection within ten (10)

days of the date of this Order. Travelers is required to file two versions of each

document: the redacted version provided to Nei and the unredacted version for the

Court's review. It is the Court's understanding that Travelers has provided all

information from the claims file and the Spoon Gordon Ballew file except that identified in the Third Supplemental Privilege Log.  If any material is being withheld that is not identified in the Third Supplemental Privilege Log, Travelers must so specify in its *in camera* notice and provide those documents as well.

IT IS FURTHER ORDERED that Travelers shall bear its own fees and costs on the present motion, as well as half of Nei's.  Fed. R. Civ. P. 37(a)(5)(C), (c)(1)(A).  While both parties failed to adhere to the discovery rules, a partial award of fees and costs is justified based on Travelers' complete failure to comply with Rule 34(b)(2)(C).  *See Holmgren*, 976 F.2d at 579−80 (upholding a Rule 37(c) award where the insurer "acted as if th[e] rule simply didn't exist").  Nei shall therefore submit to the Court an updated affidavit outlining his fees and costs on the present motion within ten (10) days from the date of this Order.

DATED this 26th day of July, 2018.

Donald W. Molloy, District Judge
United States District Court